# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **EMILY W.**[1], | Case No. 6:19-cv-1336-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Lisa R.J. Porter, JP LAW PC, 5200 SW Meadows Road., Suite 150, Lake Oswego, OR 97935. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Ryan Lu, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Emily W. brings this action under § 205(g) of the Social Security Act (the Act),

*as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Commissioner of the Social Security Administration (the Commissioner) denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Act. For the following reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground on which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff received SSI benefits based on disability as a child. On January 14, 2015, Plaintiff turned 18 years old and applied for SSI as an adult. AR 47, 49. On July 31, 2015, the Commissioner determined that Plaintiff was no longer disabled as of July 1, 2015. AR 47. Plaintiff appealed and testified at a hearing held before an Administrative Law Judge (ALJ). In a decision dated August 30, 2018, the ALJ found that Plaintiff was not disabled. AR 47-58. Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review June 24, 2019. AR 1-3. Thus, the ALJ's decision became the final decision of the Commissioner. AR 1.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff turned 18 years old on January 14, 2015. AR 47. At step two, the ALJ found that Plaintiff has the severe impairments of scoliosis, congenital heart disease, protein absorption deficiency (also known as protein losing enteropathy (PLE)), restrictive lung disease, and reading disorder (also known as dyslexia). *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform

> sedentary work as defined in 20 C.F.R. 416.967(a) except she can stand and/or walk for four hours out of an eight-hour day and sit for six hours out of an eight-hour day, with normal breaks. She can never climb ladders, ropes, and scaffolds. She can occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl. She can have no exposure to extreme cold, extreme hear, areas of high humidity, atmospheric conditions, moving mechanical parts, and high unprotected place hazards, all as rated by the Dictionary of Occupational Titles. She can understand, remember, and carry out uninvolved and routine instructions that require only occasional predictable variations from standard procedures (consistent with a

> reasoning level of 2). Instructions should be given verbally or by
> demonstration, but not solely in writing. She can perform
> occasional simple record keeping, such as time and attendance,
> tallying, and simple forms.

AR 50-51. Plaintiff had no past relevant work. AR 56. At step five, the ALJ found that,

considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs

that exist in significant numbers in the national economy, including addresser, table worker,

escort vehicle driver, and stuffer. AR 57. The ALJ concluded that Plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff was born with single ventricle defect. Single ventricle defect is "a rare

congenital heart in which a child is born with only one ventricle that is capable of pumping

blood." POMS § DI 23022.590 *available at* http://policy.ssa.gov/poms.nsf/lnx/0423022590.

"Other health problems are common" among those with single ventricle defect, and those with

single ventricle defect "require life-long monitoring by a cardiologist." *Id.* For that reason, single

ventricle defect is one of the conditions the Commissioner has identified for "Compassionate

Allowance." *Id.* That means that an adjudicator for the Commissioner may, *but is not required*

*to*, determine that a claimant with single ventricle defect meets a listing and is therefore disabled

simply by having the condition. *Id.*; *see Hall v. Colvin*, 2013 WL 4776463, at *4 (D. Idaho

Sept. 4, 2013) ("The fact that a condition is list[ed] as a compassionate allowance does not

dictate a finding of disability . . . .").

Plaintiff, like "[m]ost children with a single ventricle who have survived to adulthood"

has already had treatment to repair the ventricle. POMS § DI23022.590. Part of Plaintiff's

treatment involved the Fontan procedure, where a patient's inferior vena cava is disconnected

from the heart to the pulmonary artery to allow greater blood flow to the lungs. Fontan patients

often encounter severe limitations as adults. Despite those treatments, Plaintiff still has trouble

breathing, and her blood has a low oxygen content.[2] Plaintiff's difficulty breathing causes her to complete tasks at a slower than normal pace and requires her to take an above average number of breaks throughout the day. Plaintiff will very likely require a heart transplant in the future and is often evaluated for a pacemaker.

Plaintiff argues that the ALJ committed four errors, almost all of which relate to the ALJ's treatment of testimony that Plaintiff needs to self-pace and take additional breaks due to her single ventricle defect and accompanying complications. First, Plaintiff argues that the ALJ improperly rejected Plaintiff's subjective symptom testimony. Second, Plaintiff argues that the ALJ improperly discounted the expert medical opinions of Dr. Abigail Khan, Plaintiff's treating physician, and Dr. Matthew Fleischman, an examining psychologist. Third, Plaintiff argues that the ALJ erred in rejecting the statements of two lay witnesses, Plaintiff's mother, Diana W., and Ms. Debra Norland, an administrator at the school Plaintiff previously attended. Finally, Plaintiff argues that the ALJ failed to incorporate all medical findings into Plaintiff's RFC. Plaintiff also requests that the Court credit as true the allegedly improperly discounted testimony and remand for an immediate award of benefits. The Court addresses each argument in turn.

## A. Plaintiff's Subjective Symptom Testimony

### 1. Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[3] There is a two-step

---

[2] Plaintiff's blood-oxygen content hovers around, and sometimes dips below, 90 percent. *See, e.g.*, AR 211 ("[M]y $O_2$ levels are between 89-94%").

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166

process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016

---

(Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner also recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others on the claimant's location, frequency and duration of symptoms, the effect of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports about the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information about the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. Plaintiff's Testimony about Her Limitations

Plaintiff testified that she often has trouble breathing and has blood-oxygen levels of 89 to 94 percent. AR 211. Plaintiff particularly struggles climbing stairs and in cold temperatures. AR 71. Because of her scoliosis, Plaintiff testified that she cannot remain sitting or standing for long periods. AR 71. Plaintiff also testified that, because of her dyslexia, she has trouble reading.

AR 216. Finally, Plaintiff testified that she requires frequent breaks throughout the day. *See* AR 70 (Plaintiff would need "several breaks" to complete a hike); AR 70 (Plaintiff spreads household chores across the week to avoid exerting herself too much at one time); AR 71-72 (Plaintiff believed she would be unable to complete an office job because the job would afford to few breaks); AR 72 (Plaintiff described her karate class as "self-paced"); AR 72 (Plaintiff spread out her classes so she could have "a good amount of breaks"); AR 75-76 (Plaintiff had additional time to take tests in school).

### 3. Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 51-52. The ALJ identified Plaintiff's activities of daily living and objective medical records as bases for rejecting Plaintiff's testimony. AR 52-53. The Court addresses each rationale in turn.

#### a. Activities of Daily Living

The ALJ rejected Plaintiff's symptom testimony in part because the ALJ believed that Plaintiff's activities of daily living conflicted with her testimony that her single ventricle defect "totally disabled [her] from sedentary work." AR 52 The ALJ highlighted that Plaintiff "is a black belt in karate"; "was going to school full time for a number of semester"; "cares for her home, does household chores, and cooks for her family"; "mows the lawn, goes to church, and volunteers at karate club"; is "able to walk on flat ground 'a long way'"; and "babysits for three children, ages five, three, and 17 months." *Id.*

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable

work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639.

For daily activities to discount subjective symptom testimony, the activities need not amount to

full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally

debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly

incapacitated to receive disability benefits, and completion of certain routine activities cannot

discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th

Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on

certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise,

does not in any way detract from her credibility as to her overall disability. One does not need to

be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603

(9th Cir. 1989))); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to

be 'utterly incapacitated' in order to be disabled."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th

Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations

to be relevant to his or her credibility and noting that "disability claimants should not be

penalized for attempting to lead normal lives in the face of their limitations.").

      The ALJ's reliance on Plaintiff's activities of daily living to reject Plaintiff's testimony

that her physical symptoms are disabling is flawed because it ignores Plaintiff's testimony about

how she modified those activities to suit her limitations. The ALJ disregarded Plaintiff's

testimony about taking frequent breaks and completing tasks at her own, often slower, pace. The

ALJ makes much of Plaintiff participating in karate classes. Plaintiff testified, however, that her

karate class caters to children with disabilities, is "self-paced," and involves no competitive

sparring. AR 71-72. Nor did Plaintiff testify that she needed additional breaks only when

engaging in physical activity. Plaintiff also modified her school schedule to permit additional

breaks. AR 74-75. Similarly, Plaintiff testified that she "assign[s] different chores to different days so that everything gets spread throughout the day, so that when I need a break I can do a break." AR 74. Finally, Plaintiff added that she requires an above average number of breaks for any task and more flexibility to self-pace her work. AR 75.

Courts, including the Ninth Circuit, have often cautioned that many "activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to *periodically rest* or take medication." *Fair*, 885 F.2d at 603 (emphasis added). That caution is especially relevant when, as here, a claimant testifies extensively about her need to take additional breaks. The Ninth Circuit has even faulted an ALJ for relying on a claimant's fulltime childcare activities to refute testimony about the severity of the claimant's back and joint pain, fatigue, and weakness because the claimant's "childcare responsibilities permit her to *rest, take naps*, and shower repeatedly throughout the day." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (emphasis added). Thus, the fact that Plaintiff babysits once a week does not conflict with Plaintiff's testimony about her limitations. The ALJ erred by relying on Plaintiff's activities of daily living to discount Plaintiff's symptom testimony.

### b.  Inconsistencies in the Medical Evidence

The ALJ found that Plaintiff's "symptoms are not entirely consistent with medical evidence." AR 19. An ALJ may reject a claimant's symptom testimony if the claimant's testimony is *contradicted* by evidence in the medical record. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). An ALJ may also *consider* the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony only because the objective medical record did not fully corroborate the testimony. *Robbins*, 466 F.3d at 883; *see also Reddick*, 157 F.3d at 722

("Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence"); 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Again, it is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918 (9th Cir. 1993).

There are three problems with the ALJ's finding that Plaintiff's symptom testimony conflicts with the medical evidence. First, the ALJ did not specify which of Plaintiff's symptom testimony was unsupported by the medical evidence. This flouts the Ninth Circuit's repeated admonition that an ALJ must specifically identify the testimony the ALJ is discounting. *See, e.g.*, *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015); *Smolen*, 80 F.3d at 1284; *Dodrill*, 12 F.3d at 918. The ALJ summarized Plaintiff's treatment records. *See* AR 52-53 (detailing Plaintiff's treatment history from July 2015 through January 2018). The ALJ did not, however, link that medical evidence to any specific testimony. That was legal error. On remand, the ALJ should specify which of Plaintiff's pain testimony is unsupported by the objective medical evidence.

Even if it were obvious which portions of Plaintiff's symptom testimony conflicts with the medical evidence, the ALJ erred in rejecting Plaintiff's symptom testimony. Much of the ALJ's discussion of the medical evidence reveals only that medical evidence does not corroborate Plaintiff's symptom testimony. The ALJ did, however, identify a few items that the ALJ believe are inconsistent with Plaintiff's testimony. Specifically, the ALJ emphasized several

instances in which Plaintiff reported to doctors on her activities (*i.e.,* walking, practicing karate, cooking, and schooling).

The problem with the ALJ's reliance on Plaintiff's reports to doctors about her activities is the same problem as with the ALJ's reliance on Plaintiff's testimony about those activities during the hearing: it ignores Plaintiff's repeated explanation that she required additional breaks and flexibility to self-pace. Thus, although Plaintiff told doctors that she enjoyed participating in karate, she also told doctors that she practiced karate "at a moderate pace" and "[took] breaks when she felt tired." *See* AR 52. Plaintiff told doctors that she went on walks and hikes with family, but also reported that she felt fatigued afterward and experienced a "stabbing" chest pain. *See* AR 52-53. She told doctors that she cooked, but also told doctors that she discovered that cooking was so "physically demanding" that she abandoned her career goal of working in restaurants. *See* AR 53. She attended community college but told doctors that she "tired easily" at school, found it was "hard to make it through a full day," and "tried not to carry a heavy bag" around campus. *See id*. Plaintiff's testimony at the hearing that she tires easily and requires additional breaks matches what she told doctors throughout her treatment. Thus, these items are not valid reasons for rejecting Plaintiff's symptom testimony.

That leaves instances in which the ALJ found that the medical evidence did not corroborate Plaintiff's symptom testimony. "The Commissioner may not," however, "discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ here did exactly that—she acknowledged that Plaintiff's impairments could be expected to cause the alleged symptoms but rejected Plaintiff's testimony relating to her physical limitations because

the medical record did not support Plaintiff's account of the severity of those symptoms. Because the ALJ offered no other valid reason for rejecting Plaintiff's testimony, this was legal error.

## B. Expert Medical Opinion

### 1. Standards

The ALJ must resolve conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit and the Commissioner[4] distinguish between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(c)(1), (2); 416.927(c)(1), (2). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, a court gives the treating physician's opinion controlling weight. *Holohan*, 246 F.3d at 1202; see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A court may reject a treating doctor's uncontradicted opinion only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If the opinion of another physician contradicts a treating doctor's opinion, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631; *see also* 20 C.F.R.

---

[4] Because Plaintiff filed her application before March 17, 2017, the application is governed by 20 C.F.R. §§ 404.1527 and 416.927, and the revised rules relating to the consideration of medical opinion testimony do not apply.

§§ 404.1527(c)(1), 416.927(c)(1). As with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of another physician contradicts the opinion of an examining physician, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a non-examining, non-treating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own

interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

### 2. Discussion

#### a. Opinion of Dr. Abigail Khan

The ALJ afforded only partial weight to the expert medical opinion of Plaintiff's treating physician, Dr. Khan. In September 2016, Dr. Khan opined that Plaintiff could sit for no more than four hours during an eight-hour day and that Plaintiff's functional limitations prevented Plaintiff from completing an eight-hour workday in any occupation. *See* AR 107. The ALJ afforded only partial weight to Dr. Khan's opinion because the ALJ found the opinion was contradicted by Plaintiff's own testimony about Plaintiff's activities of daily living and Dr. Khan's treatment notes showing improvements in Plaintiff's functioning. AR 55. In February 2017, Dr. Khan noted that "adult Fontan patients," like Plaintiff, "were typically significantly limited and found it difficult to do many types of work." AR 817. The ALJ afforded only partial weight to this opinion because Dr. Khan "did not offer any specific functional limitations." AR 54.

As a treating physician, Dr. Khan's opinion "must be given substantial weight." *Embrey,* 849 F.2d at 422; *see also Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir. 1989) ("[T]he ALJ must give sufficient weight to the subjective aspects of a doctor's opinion . . . This is especially true when the opinion is that of a treating physician") (citation omitted); 20 C.F.R.

§§ 404.1527(d)(2), 416.927(d)(2). Not only is Dr. Khan a treating physician, she also is an expert in treating adult patients with single ventricle defects who, like Plaintiff, received Fontan treatment. *See* AR 861 (noting that Dr. Khan is an Assistant Professor in the Knight Cardiovascular Institute Adult Congenital Heart Disease Program). Dr. Khan's opinion that Plaintiff cannot complete an eight-hour workday is contradicted by the opinions of two state-agency reviewing physicians who opined that Plaintiff could perform sedentary work full time.[5] *See* AR 53-54. Thus, the ALJ needs only "specific, legitimate reasons . . . based on substantial evidence in the record" to reject Dr. Khan's opinion. *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir. 1987) (cleaned up).

The ALJ offered two specific, legitimate reasons for rejecting Dr. Khan's opinion, but neither reason is supported by substantial evidence in the record. First, the ALJ found that Dr. Khan's opinion that Plaintiff "could not complete an eight-hour workday doing any job" was inconsistent with Plaintiff's "level of activity (including household chores, karate, swimming, hiking, volunteering[,] and babysitting) and ability to attend school full time for over a year." AR 55. A material conflict between a treating physician's opinion and a claimant's activities of daily living can furnish a specific, legitimate reason for discounting the treating physician's opinion. *See Rollins*, 261 F.3d at 856. Substantial evidence, however, does not support the ALJ's finding that Plaintiff's activities are inconsistent with Dr. Khan's opinion. As explained above, Plaintiff repeatedly testified about her need to take an above average number of breaks during school, chores, and other activities. Indeed, Plaintiff herself testified that her need for additional breaks likely meant she could not complete an eight-hour workday. *See* AR 71-72 (Plaintiff testifying that she would have problems "working in an office somewhere . . . on a full time

---

[5] The ALJ did not identify this conflict in her decision.

basis" even if the job allowed her to "sit or stand" as she needed because the job would not afford her enough breaks).

Second, the ALJ found that Dr. Khan's notes showing that Plaintiff "was doing very well" and that Plaintiff did not "need[] to be evaluated for transplant" contradict Dr. Khan's opinion that Plaintiff cannot complete an eight-hour workday. AR 55. A conflict between a treating physician's notes about a claimant's abilities and the physician's opinion of the claimant's ability can also furnish a specific, legitimate reason for discounting the physician's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Again, however, it is not clear how these notes conflict with Dr. Khan's opinion. Although Dr. Khan noted that Plaintiff was doing well, during that same visit Dr. Khan also noted that Plaintiff was experiencing "stabbing" pain in her chest and felt fatigued after walks with her family or an hours' worth of "moderate[ly] pace[d]" karate. AR 855. That Plaintiff required rest after *an hour or less* of limited physical activity does not contradict Dr. Khan's opinion that Plaintiff cannot complete an *eight-hour* workday. Nor does the fact that Plaintiff did not immediately require a heart transplant (a drastic procedure) mean that Plaintiff can complete an eight-hour workday. After all, there is no requirement that a claimant require an organ transplant to be disabled. Moreover, although Dr. Khan did not recommend a transplant at that appointment, she thought Plaintiff's condition was severe enough to warranted close attention and even believed that a transplant could be required if Plaintiff did not "stabilize." AR 860. The ALJ erred in discounting Dr. Khan's opinion that Plaintiff could not complete an eight-hour workday.

The ALJ did not err, however, in assigning only partial weight to Dr. Khan's opinion that adult Fontan patients typically experience significant limitations. The ALJ correctly noted that ALJs are not required to credit generalized statements that, like Dr. Khan's, do not offer any

specific functional limitations. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (affirming the ALJ's decision to discount a medical expert's report because the expert did not "assign[] any specific limitations on the claimant").

### b. Opinion of Dr. Matthew Fleischman

The ALJ afforded only partial weight to the expert medical opinion of Dr. Fleischman, an examining psychologist. AR 53. Dr. Fleischman performed several tests on Plaintiff, the results of which all "point to a learning disability in reading (also know[n] as dyslexia)" as well as some attention deficits. AR 614. The ALJ incorporated the limitations Dr. Fleischman assessed to Plaintiff "to the extent that the record as a whole supports them and that they are relevant to the work, rather than the school, environment." AR 54.

Plaintiff contends the ALJ ignored portions of Dr. Fleischman's opinion. The Court disagrees. The ALJ addressed Dr. Fleischman's opinion that Plaintiff had a reading disorder in the RFC by limiting Plaintiff to "carry[ing] out uninvolved and routine instructions that require only occasional predictable variations from standard procedures." AR 51; *see Phillips v. Comm'r of Soc. Sec.*, 2020 WL 3868460, at *3 (C.D. Cal. July 9, 2020) (finding that the ALJ accommodated a claimant's dyslexia by limiting the claimant to "routine, repetitive tasks exercising only simple work-related judgments and decisions"); *Infanger-Schulz v. Berryhill*, 2017 WL 8231236, at *4 (C.D. Cal. Nov. 22, 2017) (finding that the ALJ accommodated a claimant's learning disability by limiting the claimant to "simple, repetitive tasks and simple instructions"). That same limitation also accommodates Plaintiff's attention deficiencies. *See Stevens v. Colvin*, 2015 WL 882033, at *5 (D. Or. Mar. 2, 2015) ("[T]he ALJ recognized Plaintiff's limitations regarding auditory attention when he limited the RFC to simple and routine instructions."). The ALJ further addressed Plaintiff's limitations with reading and attention by including in the RFC a requirement that Plaintiff receive verbal or demonstrative instructions

along with written instructions. The ALJ properly considered and incorporated into Plaintiff's RFC Dr. Fleischman's opinion.

## C. Lay Witness Testimony

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1056 (9th Cir. 2006).

### 1. Opinion of Diana W.

The ALJ afforded some weight to the opinions that Diana W., Plaintiff's mother, expressed in a third-party function report. AR 56; *see* AR 183-190. The ALJ found that many of Diana's statements were "speculative in nature and deal with situations that may occur in the future" and that "[n]othing in her statement supports a finding that the claimant is not capable of sedentary work." *Id.* The Court agrees with the ALJ that many of Diana's statements concerned future impairments that Plaintiff might encounter because of her single ventricle defect, not impairments that Plaintiff currently experiences. Although Diana's fears about the impairments

her daughter may encounter in the future are genuine and well placed, Plaintiff's potential future impairments are not relevant to whether Plaintiff is *currently* disabled.

Plaintiff argues that the ALJ ignored Diana's statements that Plaintiff should not do strenuous work. The ALJ did not, however, ignore those statements. The ALJ specifically mentioned Diana's statement that Plaintiff "should not lift heavy items or be required to do strenuous work" and "could get tired quickly sometimes." AR 55. The ALJ accounted for Plaintiff's inability to do strenuous work by crafting an RFC that limits Plaintiff to less than sedentary work. AR 50; *cf. Russo v. Saul*, 2021 WL 632606, at *9 (E.D. Cal. Feb. 18, 2021) (finding that an ALJ's failure to address a treating source's opinion that a claimant could not perform "physically strenuous activity" was harmless because the ALJ crafted an RFC that limited the claimant to sedentary work). Plaintiff suggests that the ALJ ignored Diana's statements that Plaintiff required an above-average amount of rest. Diana, however, did not mention rest or breaks in her third-party function report. *See* AR 183-190.

### 2. Opinion of Debra Norland

The ALJ afforded significant weight to the opinions of Debra Norland, an administrator at the school Plaintiff previously attended. AR 56. Plaintiff argues, however, that the ALJ ignored Norland's opinion that Plaintiff needed to "self-pace during physical activity." Again, Plaintiff is incorrect. Far from ignore Ms. Norland's opinion, the ALJ specifically noted that Ms. Norland opined "that the claimant needed to self-pace during physical activity." AR 56. The ALJ did not improperly reject or ignore Dr. Norland's opinion.

## D. Plaintiff's RFC

Finally, Plaintiff argues that the ALJ erred in crafting Plaintiff's RFC because the RFC contains no limitations related to Plaintiff's fatigue and need for more breaks. The RFC represents the most that a claimant can do despite his or her physical or mental impairments. 20

C.F.R. § 404.1545. In formulating the RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." *Id.* In determining a claimant's RFC and posing corresponding hypothetical questions to the VE, the ALJ must resolve conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

The ALJ crafted an RFC that afforded Plaintiff only "normal breaks." AR 50. As explained above, however, the ALJ erred in rejecting both Plaintiff's subjective symptom testimony about her need for more breaks and the opinion of Plaintiff's treating physician that Plaintiff cannot complete a full work day because of fatigue. Thus, the RFC is not supported by substantial evidence. *See Robbins*, 466 F.3d at 885-86 ("While the ALJ's RFC determination appears proper as to the limitations he considered, his failure to explain his dismissal of other claimed limitations results in our finding that substantial evidence does not support the ALJ's . . . RFC determination.").

## E. Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408. The Court does not, however, find that the record is free of all conflicts and ambiguities. The Court therefore declines to credit the erroneously rejected statements as true.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 4th day of May, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge